UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTO LOGISTICS OF ATLANTA, INC., D & J TRANSPORTATION, INC., BELL DRIVEAWAY, INC., HUB AUTO MOVERS, INC., PAUL R. SCHULTZ LLC, RDR TRANSPORT INC., D-CAPS, INC., MWW, LTD., KENVILLE INN, INC., WESTERFIELD AUTO DRIVEAWAY, INC., THE RIZ ENTERPRISES, INC., NATIONAL DRIVE AWAY, LLC, SPA VENTURES, INC., RWC AUTO DRIVEAWAY, LLC, SEATTLE AUTO MOVERS, INC., R.J. DRIVEAWAY CO., INC., AUTO DRIVEAWAY, INC., COPUS BOYS DRIVEAWAY, LLC, and DOROTHY ZETTEL, <br><br>       Plaintiffs, <br><br>   vs. <br><br>AUTO DRIVEAWAY RICHMOND, LLC, <br><br>       Defendant. | 19 C 778 <br><br> Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

Nineteen franchisees of non-party Auto Driveaway Franchise Systems, LLC bring this diversity suit against fellow franchisee Auto Driveaway Richmond, LLC ("AD Richmond") for failing to pay them for various transportation services. Doc. 1. AD Richmond moves for partial dismissal under Civil Rules 12(b)(1) and 12(b)(6) and to sever allegedly misjoined parties under Rule 21. Docs. 15, 18. The Rule 12(b)(6) motion is granted due to the complaint's failure to adequately identify the contract(s) underlying Plaintiffs' breach of express contract claim, that claim is dismissed without prejudice to repleading, and the Rule 12(b)(1) and Rule 21 motions are denied without prejudice to renewal once Plaintiffs replead their express contract claim.

1

**Background**

In resolving a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, as in resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials permit. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Auto Driveaway is a franchisor with franchisees throughout the United States that work with each other to form a nationwide network of commercial vehicle transportation service providers. Doc. 1 at ¶¶ 37-39, 47; *see Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, __ F.3d __, 2019 WL 2724564, at *1 (7th Cir. June 28, 2019) (noting that Auto Driveaway "is a franchisor for commercial vehicle transportation services"). The Auto Driveaway franchise agreements require each franchisee to follow Auto Driveaway's Operations Manual, which sets forth how franchisees should work together to fulfill customer orders. Doc. 1 at ¶¶ 35, 40-41.

When a customer requests transportation services from an Auto Driveaway franchisee, that franchisee—the "Booking Office"—enters the order on AD360, Auto Driveaway's electronic fulfillment program. *Id*. at ¶¶ 35, 41, 45. If another Auto Driveaway franchisee is closer to the customer's vehicle(s), that franchisee—the "Split Office"—works with the Booking Office to provide the requested service. *Id*. at ¶¶ 42-43, 45. Once the order is fulfilled, the Split Office invoices the Booking Office for the services it performed and the Booking Office remits to the Split Office a portion of the customer's payment. *Id*. at ¶¶ 45-46. After taking dozens of customer orders as the Booking Office and arranging for Plaintiffs to serve as the Split Office, AD Richmond failed to remit payment to Plaintiffs after they invoiced it for the services they performed as the Split Office. *Id*. at ¶¶ 48-50, 53.

The complaint asserts state law claims for breach of express contract (Count I), breach of implied contract (Count II), account stated (Count III), and unjust enrichment (Count IV). *Id*. at ¶¶ 54-79. Of the nineteen Plaintiffs, only four—RDR Transport Inc., Kenville Inn, Inc., Westerfield Auto Driveaway, Inc., and National Drive Away LLC—allege that they each suffered more than $75,000 in damages. *Id*. at ¶¶ 18, 21-22, 24, 33. The parties call those four the "Diversity Plaintiffs" because their claims exceed the amount-in-controversy requirement for diversity jurisdiction, 28 U.S.C. § 1332(a). The other fifteen Plaintiffs allege that they each suffered $75,000 or less in damages. Doc. 1 at ¶¶ 33-34. The parties call those fifteen the "Supplemental Plaintiffs" because the complaint (rightly or wrongly) premises subject matter jurisdiction over their claims under the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).

## Discussion

AD Richmond argues under Rule 12(b)(1) that the court lacks subject matter jurisdiction over the Supplemental Plaintiffs' claims. Doc. 16 at 6-14. AD Richmond also seeks to sever the

3

Diversity Plaintiffs' claims under Rule 21 because they do not arise out of "the same transaction, occurrence, or series of transaction or occurrences." *Id*. at 14-15 (emphasis omitted) (quoting Fed. R. Civ. P. 20(a)(1)(A)). Finally, AD Richmond moves under Rule 12(b)(6) to dismiss the express contract claim (Count I) on the ground that Plaintiffs do not adequately allege any express contract(s) between them and AD Richmond. Doc. 19 at 7-12.

Because "[s]ubject-matter jurisdiction is the first issue in any case," the court begins there. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). As Plaintiffs recognize, because only the four Diversity Plaintiffs' claims exceed the $75,000 jurisdictional minimum under § 1332(a), and because "aggregation of different litigants' claims is not allowed" to meet that minimum, *Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 257 (7th Cir. 2018), the court has subject matter jurisdiction over the Supplemental Plaintiffs' claims only if those claims fall within the § 1367(a) supplemental jurisdiction.

Section 1367(a) provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the district courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," and that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). To determine whether multiple claims form part of the same case or controversy, "[c]ourts often ask whether the claims share a common nucleus of operative facts." *Prolite*, 891 F.3d at 258 ("[S]upplemental jurisdiction is appropriate when the supplemental claim[s] involv[e] the same parties, contracts, and course of action as the claim[s] conferring federal jurisdiction."); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) ("Claims form part of the same case or controversy when they derive from a common nucleus of operative fact. To satisfy this

4

requirement, a loose factual connection between the claims is generally sufficient.") (alteration, citation, and internal quotation marks omitted). Determining whether to exercise supplemental jurisdiction over a contract claim requires comparing the nature and basis of that claim to the nature and basis of the contract claim(s) over which the court has diversity jurisdiction. *See Prolite*, 891 F.3d at 258-59 (concluding, after examining the "terms," nature, and alleged breaches of various "agreements," that "it is impossible to say that [a building supplier's] claim and the homeowners' claims" against a window manufacturer "are just one big controversy"); *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.*, 882 F.3d 692, 704 (7th Cir. 2018) (examining a manufacturer's claim and a dealerships' claims based on the same contract before holding that the dealerships' claims fall within the "supplemental jurisdiction"); *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 932 (7th Cir. 1996) (considering whether the plaintiffs' contract claims "arose out of the same construction project," whether "[t]he same form of purchase order was used for both subcontracts," whether the plaintiffs were "affiliated corporations under common control," and whether "the defendants pursued a single course of action" in deciding whether supplemental jurisdiction was "appropriate").

The problem here is that the nature and basis of Plaintiffs' express contract claims have been, to put it mildly, a moving target. This problem has prevented the court from evaluating whether the Supplemental Plaintiffs' claims share a common nucleus of operative fact with the Diversity Plaintiffs' claims, which in turn has prevented the court from determining whether the Supplemental Plaintiffs' claims fall within the § 1367(a) supplemental jurisdiction.

In their complaint, Plaintiffs suggested that the contracts underlying their express contract claim are the Operations Manual as well as their and AD Richmond's respective franchise agreements with Auto Driveaway:

5

> 56. At all relevant times, all franchisees, including [AD Richmond] and each Plaintiff, were bound by and subject to the Auto Driveaway confidential Operations Manual and their respective franchise agreements.
>
> 57. Pursuant to the Operations Manual and their respective franchise agreements, the parties entered into an express contractual arrangement under which: (i) they agreed to be part of the [Auto Driveaway] network; (ii) franchisees submit Customers' orders through the AD360 system which causes those orders to be fulfilled using the [Auto Driveaway] Network, including by assigning Split Offices where necessary; (iii) the Booking Offices agree to pay the Split Offices for services rendered and/or expenses fronted by the Split Offices in fulfilling the Customers' orders and based on Split [Offices'] [i]nvoices; and (v) [sic] the Booking Offices pay the Split [Offices'] [i]nvoices and collect payment from the Customer.
>
> 58. By acting as the Booking Office and submitting Customers' orders into the AD360 system for fulfillment, [AD Richmond] agreed to compensate Plaintiffs (as the Split Offices) for the performance of services performed at [AD Richmond's] request.

Doc. 1 at ¶¶ 56-58. Next, in responding to AD Richmond's argument in its Rule 12(b)(6) motion that "Plaintiffs do not [allege] that they are parties to an oral or written contract between each of them and [AD Richmond]," Doc. 19 at 2, Plaintiffs asserted that AD Richmond's "failure to tender payment to Plaintiffs violates the parties' agreement that a Booking Office would compensate a Split Office for its services," Doc. 29 at 4, though without identifying the express contract(s) in which AD Richmond had allegedly made that "agreement." Then, at the hearing on the Rule 12(b)(6) motion—which the court held prior to setting a briefing schedule on AD Richmond's Rule 12(b)(1) and Rule 21 motions—the court asked Plaintiffs to identify the express contract(s) underlying the "agreement" on which their express contract claim is premised. Doc. 34. Plaintiffs explained that the "agreement" was an oral or written understanding about when and how AD Richmond would pay the Split Office that the parties had reached using the framework set forth in Auto Driveaway's franchise agreements and Operations Manual. Given the lingering uncertainty about what the express contract(s) were or how they were formed—or even whether they were oral or written—the court in the minute

order setting the Rule 12(b)(1) and Rule 21 briefing schedule directed Plaintiffs to answer a series of questions concerning the nature and basis of the contracts underlying their express contract claim. *Ibid.* ("In responding to the [Rule 12(b)(1) and Rule 21] motion, Plaintiffs should answer the court's questions at today's hearing regarding the precise nature of the express contract alleged in Count I. … Is the contract oral, written, or both? If both, which part of the contract is oral and which part is written? Is there one contract, or are there several contracts? When, how, and by whom did the offer, acceptance, and performance occur for the contract(s)? Who are the parties to each contract? Plaintiffs also should clearly identify and delineate each of the differences between the express contract alleged in Count I and the implied contract alleged in Count II.").

Plaintiffs' ensuing brief—which unhelpfully offered that "Count I states a claim for breach of an express contract based, *inter alia*, on the agreements and obligations set forth in the Operations Manual," Doc. 35 at 3—did not resolve the uncertainty and or address the court's series of questions. When the court at the next hearing, Doc. 37, repeated each of those questions, Plaintiffs finally clarified that the contracts underlying their express contract claim were the Operations Manual, the customer orders entered into the AD360 system, and the Split Office's invoices to AD Richmond (as the Booking Office) for each order. That clarification came far too late, arriving as it did after the parties had fully briefed AD Richmond's Rule 12(b)(6), Rule 12(b)(1), and Rule 21 motions. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) ("The primary purpose of [the pleading requirements in Rules] 8 and 10(b) is to give defendants fair notice of the claims against them and the grounds supporting the claims.") (internal quotation marks omitted); *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir.

7

2011) ("The pleading requirements … frame the issues and provide the basis for informed pretrial proceedings.") (alterations and internal quotation marks omitted).

Where, as here, "neither the adverse party nor the court can make out the essence of the claims" from the complaint or the plaintiffs' briefing on a motion to dismiss, "dismissal of a complaint on the ground that it is unintelligible is unexceptional." *Beyrer*, 722 F.3d at 946 (internal quotation marks omitted); *see also Stanard*, 658 F.3d at 798, 800 (affirming the dismissal of a complaint with "a vague, confusing, and conclusory articulation of the factual and legal basis for the claims" that made them "unnecessarily difficult" to discern). Plaintiffs' failure to adequately plead or articulate the contract(s) underlying their express contract claim has prevented the court from determining whether the Supplemental Plaintiffs' claims "form part of the same case or controversy" as the Diversity Plaintiffs' claims for purposes of supplemental jurisdiction, 28 U.S.C. § 1367(a), and also whether the Diversity Plaintiffs' claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(1)(A), for purposes of joinder and severance. *See Silha*, 807 F.3d at 174 ("[T]he *Twombly-Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction."); *see also UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863-64 (7th Cir. 2018) (explaining that the plausibility of allegations that "connec[t] the [parties'] claims" may determine whether those claims are "properly joined with one another"). Accordingly, because subject matter jurisdiction turns on the nature and bases of Plaintiffs' claims, and because the nature and basis of Plaintiffs' express contract claim remained unclear until after briefing closed on the pending motions, it is appropriate to temporarily bypass Rule 12(b)(1) (and Rule 21) and dismiss the express contract claim under Rule 12(b)(6) for failure to

provide adequate notice of "the factual and legal basis for the clai[m]." *Stanard*, 658 F.3d at 798.

**Conclusion**

AD Richmond's Rule 12(b)(6) motion to dismiss the express contract claim (Count I) is granted, and AD Richmond's Rule 12(b)(1) and Rule 21 motions are denied without prejudice to renewal. The express contract claim is dismissed without prejudice, and Plaintiffs are given a chance to replead. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("We repeatedly have said that [plaintiffs] whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed.") (internal quotation marks omitted). Once Plaintiffs replead Count I and straightforwardly allege the express contract(s) underlying their express contract claim, the court will be in a better position to determine whether it should exercise supplemental jurisdiction over the Supplemental Plaintiffs' claims and whether the Diversity Plaintiffs' claims (and, if there is supplemental jurisdiction, the Supplemental Plaintiffs' claims) should be severed or remain joined.

Plaintiffs have until August 5, 2019 to file an amended complaint, and AD Richmond will have until August 19, 2019 to respond.

July 22, 2019

_____
United States District Judge